# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. _____

KARI TANDY,

    Plaintiff,

v.

VOYA FINANCIAL, INC., f/k/a ING U.S., INC.;
ING INSTITUTIONAL PLAN SERVICES, LLC f/k/a CITISTREET, LLC;
ING INVESTMENT ADVISORS, LLC;
CITIGROUP, INC.;
STATE STREET, CORP. d/b/a STATE STREET RETIREE SERVICES and CITISTREET; and
CENTURYLINK, INC.

    Defendants.

___

## COMPLAINT AND JURY DEMAND
___

Plaintiff, Kari Tandy, by and through the undersigned, and for her Complaint and Jury Demand states the following:

### JURISDICTION

1. The United States District Court has jurisdiction over this matter. The matter concerns the Employee Retirement Income Security Act ("ERISA") and gives this Court jurisdiction. 29 U.S.C.A. 1132(e)(1). This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331.

2. Plaintiff has exhausted her administrative remedies. The ERISA plan did not require Plaintiff to take steps before filing a claim of fiduciary breach. The plan states that a participant under the plan has the right to file any complaint in federal court and states no pre-requisite or

condition in doing so. Further, Plaintiff did present the issue to the plan administrator who denied to take action and made clear that further action was futile. The response of the administrator made clear that it did not believe a breach occurred unless Plaintiff could prove that the administrator did not send quarterly statements concerning the account.

3. Each Defendant has sufficient contacts with this district for the Court to exercise jurisdiction. Each served as an administrator or other fiduciary over the employment benefit plan of Qwest Communications, a Colorado Corporation.

## VENUE

4. Venue is appropriate in the District of Colorado pursuant to 28 U.S.C.A. Sec. 1391. The administrator and plan sponsor at the time the events took place was principally located in Denver, Colorado. Further, the events giving rise to the action took place in Colorado.

## PARTIES

5. <u>Kari Tandy</u>, is a resident of Littleton, Colorado. She was previously employed US West. As part and as a benefit of that employment she became a participant in US West's 401K. In 2000, US West merged with Qwest Communications and that company took over the management of the 401K. In 2011, that plan went to CenturyLink.

6. <u>Voya Finanacial, Inc.,</u> f/k/a ING U.S., Inc., LLC, has been identified by the Plan Administrator as the entity controlling the decision concerning the payment of the checks in question, and employed the individuals providing security and verifying authorization to investor accounts.

7. <u>ING Institutional Plan Services, LLC</u> F/K/A Citistreet, LLC, is identified on monthly statements as administering the 401K plan and it is believed that this entity participated in the control of the individuals who inappropriately distributed funds from the retirement account of Plaintiff.

8. <u>ING Investment Advisors, LLC</u>, is a subsidiary of ING Institutional Plan Services believed to be charged with the handling of customer care of plan participants, and, as such, was involved in the decision to distribute the funds in question and the developing of security procedures allowing the distribution to take place.

9. <u>State Street, Corp.</u> d/b/a CitiStreet and State Street Retiree Services, has been identified by the current plan administrator as being an administrator or record keeper of the Plan during the period in question.  At the time in question, State Street was a joint venture partner with CitiGroup in the operation of CitiStreet.

10. <u>Citigroup, Inc.,</u> was a joint venture partner with State Street of CitiStreet during the period in question.

11. <u>CenturyLink, Inc.,</u> is the plan administrator.  Century Link, Inc. merged with Qwest Communications, Inc. in 2011.  As a result of this merger, Century Link, Inc. became the successor plan administrator of a 401K plan sponsored by Qwest and previously by US West.  State Street Retiree Services has stated that Century Link controlled all decisions concerning the requisite authority for individuals to access to retirement accounts.

## BACKGROUND

13. In 2008, Kari Tandy was a participant of a 401K plan sponsored by Qwest Communications. She had saved considerable sums in this plan through her work at the US West Communications, a company that had merged with Qwest in 2000.

14. Defendants served as administrators or record keepers of the plan during 2008.

15. On January 11, 2008, Defendant's detailed notes transcribed from recorded conversations indicate an individual named "Jeff Tandy" called Defendants concerning the 401K account of Kari Tandy. These notes also indicate that Defendant believed this individual to be the husband of Kari Tandy. Kari Tandy, however, has never been married to any individual named "Jeff Tandy."

16. The documents in the possession of Defendant either indicated or should have indicated that Kari Tandy was not married to an individual named "Jeff Tandy." This means that Defendant, if exercising its fiduciary duties, either knew or should have known that "Jeff Tandy" was not the name of the husband of Kari Tandy.

17. The notes go on to say that "the plan participant is there and joins the call to authorize." This person was not Kari Tandy. There is no indication that the individual claiming to be the plan participant submitted any written authorization or provided any type of personal identification number. Despite the red flags of an incorrect name for the spouse and no indication that anything other than a simple oral authorization was given by someone claiming to be the plan participant, Defendants forwarded a check to the caller in the amount of $20,000. This action permanently deprived Plaintiff of these funds.

18. On February 23, 2008, Defendants' notes show that someone identified as the "spouse" calls Defendants concerning the 401K account of Kari Tandy. This individual requests that a $20,000 check be issued and asks questions about the balance on the account after the January 11, 2008 transaction.

19. On or about the date of this call, Defendant issues another $20,000 check based only upon the person claiming to be the participant being able to verify the participant's address and saying to the purported spouse, "I love you hon, talk to you later."

20. The detailed notes contain no mention of obtaining a notarized release, anything in writing from the participant to discuss or release funds to the "spouse", any verification of a password or personal identification number. Such actions fall below the industry standards and, upon information and belief, Defendant's own procedures. This distribution was not authorized by Plaintiff and the payment of the funds permanently deprives Plaintiff of these funds.

21. On March 11, 2008, Defendants issue another check from the account in the amount of $14,000. There are no notes concerning this substantial transaction. As such, there is no indication that Plaintiff gave any type of authority for this transaction.

22. Plaintiff did not authorize this transaction and the distribution permanently deprived Plaintiff of these funds.

23. On April 14, 2008, Defendants issue another check from the account in the amount of $17,000. There are no notes concerning this substantial transaction. As such, there is no indication that Plaintiff gave any type of authority for this transaction.

24. Plaintiff did not authorize this transaction and the distribution permanently deprived Plaintiff of these funds.

25. On June 19, 2008, Defendants' notes indicate another caller requesting funds from the account of Plaintiff, Kari Tandy. The notes state, "Caller identifies *himself* as Kari Tandy and requests a rollover of the account to *his* new 401K." [emphasis added.]

26. The transcription notes for the recording of the June 19 call go on to state parenthetically that the caller is the same voice of the person who previously identified himself as Jeff Tandy. Despite the fact that the caller was understood to be male and, indeed, sounded male, and the fact that the Defendants' records should indicate Kari Tandy, its plan participant, as female, and the fact that the spelling of the name "Kari" in the manner of the Plaintiff is uniquely female, no concern was raised about the male caller identifying himself as Kari Tandy and he was allowed to withdraw $10,900. The notes do not recognize that any type of verification be given by the caller to confirm the identity. This transaction was not authorized by Plaintiff and the distribution permanently deprived Plaintiff of these funds.

27. On July 30, 2008, the same male caller contacted Defendants stating that he was Kari Tandy. Once again, the notes identify the caller as being male, stating that the caller identifies "himself" as Kari Tandy. Once again, the notes do not reflect that type of verification that the caller is who he says he is. The caller requests and receives the remaining funds in the account, $14,278.

28. Plaintiff believes that the caller was actually her ex-husband Peter Tandy and is unaware of who the others on the call may have been.

29. Defendants took detailed transcription notes of conversations with the ex-husband of Plaintiff. None of them reveal that Defendants accepted more than mere oral authorization.

30. On information and belief, similar checks were written to unauthorized individuals in March 2005 and at other times.

31. Plaintiff did not discover the unauthorized transactions until December 2013. She believes that her ex-husband made the unauthorized withdraws. Kari Tandy did not have notice of the withdrawls prior to December 2013 and believes her ex-husband simply removed the relevant quarterly report from the mail upon receipt. Upon learning of the unauthorized withdraw, Plaintiff immediately contacted the Plan Administrator to inform of the issue. Plaintiff also contacted law enforcement concerning the issue.

32. On information and believe, the standard under the Plan, upon information and belief, is to require the plan participant to not only authorize the transfer of funds, but to also provide a PIN. The notes of Defendants' do not indicate that this was ever done. Further, the industry standard for the release of funds is much higher. Defendants' breach their own standards and the standards set forth in the industry. As a result, Plaintiff has been deprived of a considerable amount of her savings.

## FIRST CAUSE OF ACTION AND CLAIM FOR RELIEF – ERISA BREACH OF FIDUCIARY DUTY

33. Each of the prior paragraphs are incorporated by reference as if stated verbatim herein.

34. Defendants have a variety of fiduciary duties to Plaintiff. These include the duty to safeguard her funds and to not inappropriately assign or alienate her from her funds.

35. ERISA disallows the payment of a participants' funds to the spouse or other family member of the participant absent appropriate authorization.  Such authorization was not present in this matter.

36. Defendants failed to follow their own procedures in the disbursement of funds from Plaintiffs account to an individual that was not the Plaintiff and that was not sufficiently authorized by Plaintiff.

37. Defendants' procedures to safeguard funds from the unauthorized access of third parties fell below the requisite industry standard.

38. As the result of these breaches, Plaintiff has been permanently deprived of the funds distributed.

## SECOND CAUSE OF ACTION AND CLAIM FOR RELIEF – ERISA CLAIM FOR BENEFITS

39. Each of the prior paragraphs are incorporated by reference as if stated verbatim herein.

40. Plaintiff has the right to benefits under the plan.

41. Plaintiff has been denied the right to benefits under the plan by the unilateral actions of Defendants and has been damaged thereby.

## THIRD CAUSE OF ACTION AND CLAIM FOR RELIEF – NEGLIGENCE

42. Each of the prior paragraphs are incorporated by reference as if stated verbatim herein.

43. To the extent that any Defendant is not bound by ERISA, that Defendant is negligent for the actions described above.

44. The actions fell below the requisite standard of care.

45. Such breach was the direct and proximate cause of the damage described above.

## JURY DEMAND

46. Plaintiff respectfully requests that this matter be heard by a jury.

Respectfully submitted this 4th day of June, 2014,

*/s/Jeffrey Pederson* (original signature on file)
Jeffrey Pederson
Jeffrey Pederson, P.C.
8101 E. Prentice Ave., Suite 1000
Greenwood Village, CO  80111
Tel:  303-300-5022

Plaintiff's address:
31 Honey Locust
Littleton, CO  80127